It is my intent today to talk about the motion per new trial and then some of the sentencing issues which in light of the ameline en banc arguments that will be heard are going to be somewhat vague and I want to talk about, however, some of the sentencing issues in this case. I would, of course, entertain questions on any of the other issues that the court may have. With respect to the motion for new trial, I submit to you that the district court judge ignored the testimony of Mr. Habitone at the motion for new trial when she issued her order denying the motion for new trial. What was important, there were a couple of conversations between Mr. Vasquez and Special Agent Coleman. What was important for purposes of the motion for new trial was the conversation that Mr. Vasquez had with Mr. Coleman during the execution of the search warrant in April of 1998. At that time, according to Mr. Vasquez's testimony, Agent Coleman acknowledged that he had asked Mr. Vasquez to save images for him. Agent Coleman denied that he had ever asked that. That was a bone of contention at the trial. What Mr. Habitone would have been able to say had he testified at trial was that he had previously asked Mr. Vasquez to save, and I think in Mr. Habitone's words, something he didn't know were his images. Well, this was sort of tagged on to the defense theory that the defendant was actually doing this for the benefit of law enforcement. Do I have that right? Yeah, it's they call it a public authority defense, and if a defendant has a good faith belief that he's doing this for the benefit of law enforcement, it is a defense that's recognized in the Ninth Circuit. Wasn't there substantial evidence to the contrary? Not with respect to the Not just on this point. Wasn't, to reframe the question, wasn't there substantial evidence of Mr. Vasquez's involvement in child pornography wholly independent of any involvement with law enforcement? For example, the testimony of his former girlfriends? Well, the one-word answer to your question is yes, but there's always a but. Donna McAdams was one of the former girlfriends. Her testimony as to Mr. Vasquez's involvement with child pornography predates the conversation that Mr. Vasquez had with Agent Coleman in December of 1997, and it's that, Mr. Vasquez asserts that it was during that conversation that they had this discussion about saving images for Agent Vasquez. You know, the drug dealer and user has a heavy involvement in drug use and drug dealing before he becomes an informant. So the fact that he previously had an interest or possessed child pornography does not detract from the public authority defense. In fact, those are the kind of people that you want to be helping law enforcement because they know how to do what needs to get done to catch the bad guys. So I don't know that that's particularly relevant to the public authority defense. It certainly is relevant to his current possession, but he never denied the current possession of these images. The – at the hearing, the only witness to testify was Mr. Havitone. The government presented no live testimony. There was an affidavit from the defense attorney who did not even mention this testimony, this April 1998 conversation in which Agent Coleman is supposed to have acknowledged asking Mr. Vasquez to save these images for him. The attorney did say it, a tactical reason for not doing it. He said there were tactical reasons, but he didn't – you can't just say that without having a foundation for it. And quite frankly, he said that he thought it would be more harmful than good to put this individual on the stand, didn't he? Well, I think in general that's what he said, but you can't say that – you can't say that without any foundation for it and for you to be able to just rely on a bare statement, I did it for tactical reasons. What were the tactical reasons? Well, the tactical reason, as I read his statement, is that I think the jury would decide that this is a friend of the defendant who's just trying to say whatever is necessary to help the defendant out, and hence the jury may develop a disbelief in the defendant generally. Well – I don't know the meticulous of it, but I've certainly heard of cases where that's an explanation offered for why a witness is not called. Well, you know, there's cases cited in the brief where – and there's one in particular where – the name escapes me, and I apologize – the defendant had said that he was at home asleep when the crime was committed. The only people that would have been able to corroborate that were his family. And it was held to be ineffective assistance to counsel not to call family members to corroborate the story. And the reasoning goes, you've got the – and it's a bad choice of words in this case – the naked testimony of the defendant against the rest of the evidence. Here, we have the naked testimony of a three-time convicted felon against Special Agent Randall Coleman. And you need to be able to – I think the word they use is create an equilibrium in the evidence. And the case of Riley v. Payne, there's a few others that are cited in my brief, are full of girlfriend or family that were not called to corroborate the defendant's testimony that should have been called. But usually in those cases, it's unlike here where the guy says the fellow's memory is spotty. Part of what he would have been called for to corroborate didn't need corroboration because it wasn't in dispute. And the lawyer goes through each of these reasons. Now, a different lawyer might conclude otherwise. But it seems to me that that distinguishes this case from a lot of the other ineffective assistance of counsel and failure to call the witness cases because this lawyer gave us quite a recitation in the record of why he didn't call him. And all we could say is that it seemed like faulty reasoning on the part of the lawyer, but it wasn't necessarily rise to the ineffective assistance of counsel. Well, I appreciate the question. I think the record belies the affidavit. And it's unfortunate that the government did not call the defense attorney to testify. But when Mr. Havitone testified at the motion for new trial hearing, his record is his memory was not spotty. And, you know, none of these other reasons, his being a buddy, there was no impeachment of Mr. Havitone except really with respect to this alleged computer parts fraud that Mr. Vasquez was participating in, for which Mr. Havitone picked up parts on a couple of occasions. And on the third occasion, when he recognized that this was a fraud because one of the testifying girlfriends had forged a signature, he said no, and that that caused a strain in their relationship. So the ---- Who was Vasquez's counsel at the time of the motion for new trial? He had a different lawyer by the name of Alex Gonzalez. Was there anything to prevent that counsel from calling Havitone at the hearing live? Havitone was called at the hearing live. Okay. Was there anything that restricted his cross-examination of Havitone? He did the direct examination of Havitone. Okay. All right. Was he precluded in any way from bringing out facts that bore on the purported importance of the testimony or how it might integrate into the theory of defense? Well, I think he did. I mean, I don't know. All I'm asking is, did the ---- this was different counsel. This was not the counsel that offered the affidavit. This is ---- he, Vasquez, at this point has new counsel. That's correct. Right? That's correct. And I'm simply asking, from what we can tell from the record, did that counsel have a full and fair opportunity to examine Havitone, to present him, and to present the information that related to the effort to obtain a new trial? There's nothing that I'm aware of that suggests otherwise. Okay. The only other point I want to make with respect to the motion for new trial is that the government did exploit the failure to corroborate Mr. Vasquez's testimony during closing argument. And I'll quote, this is a man with three prior felony convictions, and he is telling you that you should believe him over Agent Coleman, and then she mentions the other witnesses as well. The only evidence, and I'm quoting again, the only evidence at all regarding the defendant's public authority defense is his testimony, and his testimony may be totally rejected by you. She further testifies. She further argues. Yes, thank you. He even testified that he's told all these other people, he's told all these other people about this law enforcement defense, including his wife, but none of these people have ever objection, and then it moved on. So the government did exploit Mr. Vasquez's, what I'll call, naked testimony. Do you want to save a little time for rebuttal? I do. I want to save a couple minutes. I did want to talk about sentencing. Sure. You just don't want to hear it. No, no. Okay. We raised Blakely issues in supplemental briefs, then Booker came down. I did a 28-J letter, and I mentioned Ameline, and now that's – I can't do that. So what I – all I want to do here at this point is talk about – make sure the Court understands that he started at a level 17, he jumped up to a 28, he got three two-point enhancements and five points for grouping, then his criminal history went – was determined to be four. So that rather than looking at – if you're at a level 17, he's looking at 37 to 46 months, he was bumped up to – and that's at a level – a criminal history of four. He went up to – This is more of a Booker issue than – I mean, more of a Fan Fan issue than it is a Booker issue, isn't it? Well, it's Booker – This is not an instance in which the sentence was aggravated based on a judge-made finding that was not admitted by the defendant or established by the jury, right? No, I disagree. There's two points for minor under 12. That was never determined by the jury or admitted by the defendant. There's two points for obstruction. That was never admitted or found by the jury or admitted by the defendant. There's two points for computer transmission. Again, not found by the jury and not admitted by the defendant. And then the five points for grouping, and quite frankly, we don't have enough time to discuss how grouping fits into all of this stuff. So I do disagree with you that this is not a Booker issue. It's a Fan Fan issue. I think it's a Booker issue. It's a Sixth Amendment issue under a mandatory guideline system. All right. You have a little over two minutes for rebuttal, if you choose to use it. Counsel, Mr. Morrissey. Good morning. Mike Morrissey for the United States. Let me address first why it was not deficient performance for Mr. Park, trial counsel, not to call Mr. Habertone. The defense has said in their briefing today that, well, the judge's order belies what's in the record. But what was actually in the record were four separate interviews of Mr. Habertone in which he never said the crucial statement that I heard Agent Coleman tell Vasquez, yes, I directed you to save this. That statement only comes after trial. And it is, in fact, in the record, there's four separate statements that would have led to devastating impeachment. Mr. Park's affidavit makes clear that he talked to Habertone about both the December 2nd, 97 interview and about the April 1998 search warrant. And Vasquez, and I'm sorry, and Habertone never says, yes, I heard Agent Coleman tell him that. The FBI interviews him in December 1998, and he never, and Habertone never says that. The FBI interviews him again in February 2002. All of this is in the record. And Habertone never claims that that's what he heard Agent Coleman says. The defense interviewer interviews him in February 2003. This is Exhibit C to the defense motion for a new trial. And he doesn't say that. He doesn't say, I heard Agent Coleman say this. The first time we hear the quote that Habertone is willing to say that Agent Coleman said to the defendant, do you have something for me that I asked you to save for me, is March 13th, after the trial has been concluded. So there were four separate statements that would have been used to totally destroy Habertone's testimony, if indeed that's what he was going to say on the day of trial. Furthermore, the impeachment that was discussed in the court's order denying this motion for a new trial makes clear that Habertone and Vasquez's criminal involvement with each other in actions that ultimately led to Vasquez being charged in a case that got dismissed for mail fraud. The original search warrant in this case was for mail fraud, not child porn. That would have been impeachment that would have come in. So you had a witness that, looking at this from the perspective of Mr. Park as trial counsel, was subject to devastating cross-examination on prior inconsistent statements and who would have had to admit it to having been involved, and he did admit at the motion for new trial, in picking up materials for the defendant, computer equipment, using names that were not his own. And so this Court looks at this with a deferential standard and from the perspective of the time, and that's why Mr. Park made a reasonable decision, as the district court found, not to call this witness. But even if this Court were to say, well, our review is de novo and we find that this was deficient performance, there's absolutely no way that the defense can establish that there was prejudice, as one of the questions went to before wasn't this contradicted by other evidence. The defense that I was saving this because the FBI told me to was completely undermined by the fact, and this is charging counts 1, 2, and 3, that the defendant provided a disc of child porn to a minor, to the 14-year-old brother of one of his girlfriends. That's not consistent with saving it for law enforcement. Another one of the defendant's girlfriends testified that he told her, I'm going to market and sell my disc of child porn. That's not consistent with the defense of I was saving it at the direction of the FBI. So there was, in fact, furthermore, one further point, to be using it under a public authority defense that the FBI told me to, the jury knew that this defendant was a three-time felon, and they knew from the testimony of Agent Coleman that the FBI doesn't use three-time felons for this type of operation to commit criminal acts at the behest of the government to save child porn. So there was absolutely no way under the prejudice inquiry this jury was ever going to believe, no matter how many people said it, that Agent Coleman told this defendant, please save the child porn for me. In the cases where this Court has been willing to say trial decisions and strategy decisions are not unreviewable, those cases have gone to two things, lack of diligence or confusion on the part of the defense counsel at trial. On the diligence inquiry, the case in the briefs is Brown v. Myers, where the defense attorney never went out and interviewed the witnesses who could have provided the alibi. We don't have that here. Mr. Havitone was interviewed by the defense attorney. It's the substance of that is in his affidavit. And Havitone was, in fact, there on the day of trial and could have been called if he would have been useful. So we don't have a diligence problem. The defense says, though, we have a confusion problem, that Mr. Park just didn't understand what the testimony would have gone to. And that's contradicted by the record. If this Court looks at the affidavit that Mr. Park filed, he says quite clearly, I talked to Havitone about the December 1997 issue, which is the only time that Havitone could have heard the FBI agent say, save child porn for me. And Park says, that's not what he told me. And Park's affidavit also says, I talked to him about the April 1998 search warrant, which is when it also would have been heard. And it just that's not what Havitone said at that time. So we don't have an issue where the defense attorney was confused as to whether or not this testimony would have been helpful. It just simply would not have been helpful in light of Havitone's problems and in light of the devastating evidence through the other girlfriends and the minor of what this individual was really doing with child porn. The district court's order, of course, rests on both these grounds, that it was neither deficient performance and that nor that there was any prejudice to the defendant. And this Court, on this record, has no basis to disturb those findings because, contrary to the defendant's argument, they are, in fact, well-rooted in the record. If the Court has no questions relating to that issue, I would like to address briefly, since the sentencing issues have been raised, where I think we are on that. We'll know more after the Embank decision in Ameline because that's when we'll know what do you do if a defendant was given a sentence under a mandatory guidelines system. Is that necessarily something that has to be remanded? And the government's argument is, under Factors III and IV of the Plain Error Analysis, that the defendant won't be able to show that he would have been sentenced more leniently under advisory guidelines. Furthermore, the government's argument is, on Prong IV, that the fairness and integrity of a system that was in use for two decades suggests that this was a reasonable system and the sentence given was a reasonable system and that that inquiry would favor upholding the sentence. So I know we can't get too deeply into this because the Embank panel will resolve this, but that is the government's argument for this Court to consider at a later date as to whether or not this would need to be remanded for a resentencing. What that is the issue that we all hope will be resolved vis-a-vis the mandatory versus advisory. But what about the Booker issue, going back to Apprendi, of enhancement based on findings, particularly with respect to the obstruction and the age of the minor, not being found by a jury? The government's position is the government is completely fine under that analysis. What Booker says is you can't have judicial findings under a mandatory system. We would not be under a mandatory system anymore, so it's not the fact of judicial findings that poses the problems. The problem that was posed has now been solved because it's not a mandatory system anymore. The system now in place is constitutional without problems posed by the judicially made findings. All right. Mr. Lieberman, you have about two minutes. Thank you, counsel. Briefly, the confusion with Mr. Park, the trial lawyer, is found in paragraph 5 of his affidavit, because he is trying to determine whether or not Mr. Havitone remembered Agent Coleman talking about saving future images during the conversation in 1997, in December of 97, when the fact of the matter is, according to the testimony at trial of that conversation, the acknowledgment by Agent Coleman was in April of 1998. With respect to the sentencing, I tend to agree with the government that we're going to have to wait for the Ammaline decision. This is a plain error case. I do — I do — But, Mr. Lieberman, you just said, I understand paragraph 5 is about the conversation in 97. Paragraph 6 is about the conversation in 98. It seems to say pretty much the same thing. Well, by omission, he doesn't mention whether or not — let me back up. In paragraph 5, he says, I don't see that same language in paragraph 6. He doesn't address the subject. I do think this is a plain error case. The great amount of sentence disparity under the mandatory guidelines, I think, if you do deny on the motion for new trial, you'll have to remand under Ammaline and if the court wants after Ammaline is decided, I would sure be happy to file a supplemental brief or a letter. Thank you. Thank you, counsel. Thank both counsel for their argument. The case, just argued, will be submitted for decision. We'll proceed.
judges: Hawkins, McKeown, Clifton